IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

| | | |
|---|---|---|
| AJA BROWDER<br>10934 Hamden Ave<br>Cleveland, Ohio 44108 | ) <br>) <br>) <br>) | CASE NO. 2020CV01169<br>JUDGE: Forchione |
| Plaintiff, | ) <br>) | |
| v. | ) <br>) | **COMPLAINT FOR DAMAGES AND REINSTATEMENT** |
| RES-CARE OHIO, INC.<br>2821 Whipple Ave NW<br>Canton, Ohio 44708 | ) <br>) <br>) <br>) | **JURY DEMAND ENDORSED HEREIN** |
| Serve also:<br>Res-Care Ohio, Inc.<br>c/o Corporation Service Company,<br>50 West Broad Street, Suite 1330<br>Columbus, Ohio 43215 | ) <br>) <br>) <br>) <br>) <br>) | |
| Defendant. | ) | |

Plaintiff, Aja Browder, by and through undersigned counsel, as her Complaint against the Defendant, states and avers the following:

**PARTIES AND VENUE**

1. Browder is a resident of the city of Cleveland, County of Cuyahoga, State of Ohio.

2. Res-Care is a foreign corporation, licensed and registered to do business in Ohio.

3. At all times, material herein, Res-Care owned and operated a facility located at 2821 Whipple Ave NW, Canton, Ohio. ("Canton Office")

4. All of the material events alleged in this Complaint occurred in Stark County.

5. Res-Care is a "person," "employer," and/or "home" pursuant to R.C. § 3721.01 *et seq.*

6. During all material events asserted herein, Browder was an "employee" pursuant to R.C. § 3721.24.

7. Personal jurisdiction is proper over Defendants pursuant to R.C. § 2307.382(A)(1) and (4).

8. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).

9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

10. Browder is a former employee of Defendant.

11. Defendant employed Browder as a Qualified Intellectual Disabilities Professional.

12. Browder began working for Defendant on or around December 19, 2019.

13. Defendant operates a long-term care facility for individuals with mental disabilities.

14. Defendant has a duty to maintain a healthy and safe environment for its residents.

15. Defendant has a new employee orientation process. ("Orientation")

16. Defendant requires employees to complete Orientation in order to ensure proper resident care.

17. Browder received training on proper resident care through Defendant.

18. In or around early January 2020, Browder noticed that there were multiple expenditures from resident's accounts for items that were not in the resident's possession. ("Missing Funds")

19. Browder became aware of the Missing Funds because she looked through patients' rooms to find the possessions that were listed on the receipts.

20. Browder saw on receipts during the Missing Funds incident for cologne, perfume, and clothing, and these purchases were out of the ordinary for the residents.

21. Browder believed that the Missing Funds were the result of one or more of Defendant's employees purchasing items using the resident's money and keeping the items for themselves. ("Theft From Residents")

22. Browder believed that the Theft From Residents constituted abuse.

23. Browder believed the Theft From Residents constituted abuse because it was stealing the residents' money when the residents were not of sound mind to protect themselves from theft.



2

The Employee's Attorney.™

24. It was a good faith belief for Browder to believe that the Theft From Residents constituted abuse.

25. Browder believed that the Theft From Residents constituted neglect.

26. Browder believed the Theft From Residents constituted neglect because it was stealing the residents' money when the residents were not of sound mind to protect themselves from theft.

27. It was a good faith belief for Browder to believe that the Theft From Residents constituted neglect.

28. In or around early January 2020, Browder complained to Elizabeth Borsellino about the Missing Funds. ("Missing Funds Complaint")

29. During all material events asserted herein, Borsellino managed the Canton location.

30. During all material events asserted herein, Borsellino has and/or had authority to hire, fire, and/or discipline employees.

31. During all material events asserted herein, Borsellino is and/or was a manager.

32. In or around early January 2020, Browder complained to Danielle Ford about the Missing Funds.

33. During all material events asserted herein, Ford has and/or had authority to hire, fire, and/or discipline employees.

34. During all material events asserted herein, Ford is and/or was a supervisor and/or manager for Defendant.

35. Upon information and belief, Defendant has a policy to investigate potential abuse and/or neglect of residents.

36. Upon information and belief, Defendant has a policy to investigate funds missing from resident's accounts.



Case: 5:20-cv-02113-JRA Doc #: 1-1 Filed: 09/18/20 4 of 15. PageID #: 10

37. An investigation should include interviewing the individual who reported the incident.

38. An investigation should include interviewing witnesses to the reported incident.

39. An investigation should include getting a written statement from the person who reported the incident.

40. An investigation should include getting a written statement from witnesses to the incident.

41. In response to Browder's Missing Funds Complaint, Defendant did not interview Browder.

42. In response to Browder's Missing Funds Complaint, Defendant did not interview individuals with knowledge of the handling of resident's funds.

43. In response to Browder's Missing Funds Complaint, Defendant did not get a written statement from Browder.

44. In response to Browder's Missing Funds Complaint, Defendant did not get a written statement from individuals with knowledge of the handling of resident's funds.

45. Defendant did not investigate Browder's Missing Funds Complaint.

46. Browder gave Defendant time to remedy the problems raised in her Missing Funds Complaint.

47. By not investigating Browder's Missing Funds Complaint, Defendant allowed the Theft From Residents to continue.

48. Following Browder's Missing Funds Complaint, Defendant began looking for a reason to terminate Browder.

49. On January 25, 2020, the father of Browder's child passed away.

50. Browder utilized bereavement leave between January 25, 2020, and February 5, 2020.

51. When Browder returned to work on February 5, 2020, she noticed that Defendant had not remedied the Missing Funds.

The Employee's Attorney.™ 4



52. On or about February 6, 2020, Browder reported the Missing Funds to the Cuyahoga County Board of Developmental Disabilities. ("County Complaint")

53. Upon information and belief, when Browder made the County Complaint, a written record was created.

54. Browder's County Complaint was substantially similar to her previous Missing Funds Complaint.

55. Browder's County Complaint was so similar to her previous Missing Funds Complaint that it identified that she was the individual who made the complaint.

56. The facts in Browder's County Complaint were unique to Browder's job duties, so that it identified Browder as the individual who made the complaint.

57. Defendant became aware of the County Complaint.

58. Defendant became aware that Browder made the County Complaint.

59. During all material events asserted herein, Barbara Ballway is and/or was the Executive Director.

60. As the Executive Director, Ballway has and/or had authority to hire, fire, and/or discipline employees.

61. As the Executive Director, Ballway is and/or was an employer of the Defendant.

62. After Browder's County Complaint, Ballway sent an email to Browder which acknowledged that the County received the County Complaint, and information about protocols. ("County Complaint Email")

63. Ballway sent the County Complaint email to Browder to circulate to Defendant's employees.

64. There was no legitimate reason for Ballway to have Browder circulate the County Complaint email.



65. Ballway instructed Browder to circulate the County Complaint Email because she knew that Browder made the County Complaint Email.

66. After Browder circulated the County Complaint Email, Ford became openly hostile toward Browder.

67. After Browder circulated the County Complaint Email, Ford began nitpicking Browder's work to a higher degree than other employees.

68. After Browder circulated the County Complaint Email, Browder's coworkers distanced themselves from Browder.

69. After Browder circulated the County Complaint Email, Browder's coworkers would no longer engage Browder in small talk.

70. After Browder circulated the County Complaint Email, Browder's coworkers and subordinate employees ceased following Browder's directions.

71. After Browder circulated the County Complaint Email, despite Browder's coworkers' hostile behavior, Defendant did not discipline these employees.

72. After Browder circulated the County Complaint Email, despite Browder's coworkers' insubordinate conduct, Defendant did not discipline these employees.

73. After Browder circulated the County Complaint Email, Defendant began targeting Browder for termination.

74. Defendant's actions were in retaliation for Browder's complaint.

75. On February 24, 2020, Browder went to the dentist's office after work to have a tooth removed. ("Procedure")

76. Browder's healthcare provider ordered her not to work for at least one day following the Procedure.



77. Browder's healthcare provider issued Browder a note ordering her not to work for at least one day following the Procedure. ("Note")

78. After Browder underwent the Procedure, Ford requested that Browder to come into work and cover the night shift for an employee who had not shown up for work. ("February 24 Call")

79. Browder was not scheduled to work the night of the February 24 Call.

80. Browder explained to Ford that she was unable to work due to the Procedure.

81. After the Procedure, Browder provided the Note to Defendant.

82. On or about February 25, 2020, Borsellino placed Browder on administrative leave.

83. Defendant placed Browder on administrative leave for alleged insubordination and failure to perform her job duties on February 24, 2020. ("Stated Basis for Suspension")

84. On February 26, 2020, Browder attempted to contact Defendant to discuss the Stated Basis for Suspension and the Theft From Residents. ("February 26 Call")

85. Defendant did not respond to Browder's February 26 Call.

86. On February 27, 2020, Browder attempted to contact Defendant to discuss the Stated Basis for Suspension and the Theft From Residents. ("February 27 Call")

87. Defendant did not answer Browder's February 27 Call.

88. On February 27, 2020, a human resource representative of Borsellino called Browder and told her that her employment was terminated. ("Defendant's February 27 Call")

89. During the Defendant's February 27 Call, Defendant terminated Browder for alleged insubordination and failure to perform her job duties on February 24, 2020. ("Stated Basis for Termination")

90. Defendant has a progressive disciplinary policy. ("Policy")



91. Under the Policy, Browder had not been given a verbal warning for the Stated Basis for Termination.

92. Under the Policy, Browder had not been given a written warning for the Stated Basis for Termination.

93. Under the Policy, Browder had not been given a final written warning for the Stated Basis for Termination.

94. Prior to terminating Browder, Defendant never issued any written communication criticizing the Stated Basis for Termination.

95. Browder had not been insubordinate during the February 24 Call.

96. Browder had sufficient justification to deny Ford's request that Browder cover the shift of an employee who did not report to work.

97. Browder explained her justification for not adhering to Ford's request that Browder cover the shift of an employee who did not report to work.

98. Browder provided Defendant with documentation supporting her justification for not adhering to Ford's request that Browder cover the shift of an employee who did not report to work.

99. Defendant's assertion of the Stated Basis for Termination has no basis in fact.

100. Defendant's assertion of the Stated Basis for Termination did not actually motivate Defendant's decision to terminate Browder.

101. Defendant's assertion of the Stated Basis for Termination was insufficient to motivate the termination of Browder.

102. Defendant's assertion of the Stated Basis for Termination was pretext to terminate Browder.

103. Defendant did not terminate similarly situated employees who did not complain about suspected abuse and/or neglect, for reasons similar to the Stated Basis for Termination.



104. The above facts demonstrate that Defendants engaged in a pattern and practice of unlawful retaliation.

105. Defendant terminated Browder in retaliation for making the Missing Funds Complaint.

106. Defendant terminated Browder in retaliation for making the County Complaint.

107. There was a causal connection between Browder's Missing Funds Complaint, and County Complaint and Defendants' termination of Browder.

108. As a direct and proximate result of Defendant's conduct, Browder suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

### COUNT I: RETALIATION IN VIOLATION OF R.C. § 3721.24

109. Browder restates each and every prior paragraph of this Complaint as if it were fully restated herein.

110. During her employment, Browder made good-faith verbal reports to Defendant about the Missing Funds.

111. Pursuant to R.C. § 3721.24(A), it is unlawful for an employer to take an adverse action against a person who, "in good faith, makes or causes to be made a report of suspected abuse, neglect, or exploitation of a resident or misappropriation of the property of a resident."

112. Pursuant to R.C. § 3721.24(A), protected activity also includes a person who "indicates an intention to make such a report."

113. During her employment, Browder complained to Defendant about what she believed constituted neglect or abuse of a resident.

114. Browder made her complaints in good faith.

115. Browder reasonably believed that the Missing Funds constituted the neglect or abuse of a resident.



116. During her employment, Browder made the County Complaint upon Defendant's failure to correct the issues raised in her Missing Funds complaint.

117. Browder's County Complaint concerned what Browder believed constituted abuse, neglect, and/or exploitation of residents.

118. It was reasonable for Browder to believe that the conduct complained of in her County Complaint constituted abuse, neglect, and/or exploitation of residents.

119. Browder gave Defendant more than 24 hours to correct the issues raised in her Missing Funds complaint prior to making the County Complaint.

120. Defendant became aware that Browder made the County Complaint.

121. Defendant retaliated against Browder by terminating her employment based on her Missing Funds Complaint, and County Complaint.

122. Defendant's termination of Browder was in violation of R.C. § 3721.24, *et seq*.

123. As a direct and proximate result of Defendant's conduct, Browder suffered and will continue to suffer damages.

## COUNT II: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

124. Browder restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

125. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he/she engages in protected activity under Ohio law.

126. A clear public policy exists and is manifested in R.C. § 3721.24 protecting individuals from retaliation who make complaints about conduct that they believe constitute neglect, abuse, and/or exploitation of residents.

The Employee's Attorney.™ 

127. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.

128. It was reasonable for Browder to believe that Defendant's conduct violated Ohio's public policy and/or statutes protecting individuals from retaliation for reporting the abuse, neglect, and/or exploitation of residents.

129. Defendant's employees became aware that Browder made complaints regarding what she believed constituted the abuse, neglect, and/or exploitation of residents.

130. Defendant dissuaded employees from making future complaints about abuse, neglect, and/or exploitation of residents when Defendant terminated Browder's employment for doing so.

131. Defendant fostered an unsafe environment for residents as a result of dissuading employees from reporting conduct that employees believe constitutes abuse, neglect, and/or exploitation of residents.

132. Defendant's termination of Browder's employment jeopardizes these public policies.

133. Defendant's termination of Browder's employment was motivated by conduct related to these public policies.

134. Defendant had no overriding business justification for terminating Browder.

135. As a direct and proximate result of Defendant's conduct, Browder has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages



## DEMAND FOR RELIEF

WHEREFORE, Browder demands from Defendants the following:

(a) Issue an order requiring Defendant to restore Browder to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Browder for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Browder's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

*Daniel Dubow* -SBR(0099035)
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff*

The Employee's Attorney.™

12



## JURY DEMAND

Plaintiff Aja Browder demands a trial by jury by the maximum number of jurors permitted.

*Daniel Dubow* (BR 0099035)
Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
THE SPITZ LAW FIRM, LLC



IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

2020 CV 01169

Aja Browder
_____
Plaintiff/Petitioner
VS.
Res-Care Ohio, Inc.
_____
Defendant/Petitioner

Foreclosure WRITTEN REQUEST FOR SERVICE
(TYPE OF PAPERS BEING SERVED)

Complaint for Damages

☐ PLEASE CHECK IF THIS IS DOMESTIC CASE

TO THE CLERK:

PLAINTIFF/DEFENDANT REQUESTS:

CERTIFIED MAIL SERVICE ☑

PERSONAL SERVICE ☐

PROCESS SERVICE ☐

EXPRESS MAIL SERVICE ☐

REGULAR MAIL SERVICE ☐

RESIDENCE SERVICE ☐

FOREIGN SHERIFF ☐

**LIST NAME AND ADDRESS OF PERSON(S) TO BE SERVED**

ON

Res-Care Ohio, Inc.
c/o Corporation Service Company,
50 West Broad Street, Suite 1330
Columbus, Ohio 43215

Daniel Dubow
ATTORNEY

25200 Chagrin Blvd., Ste.200, Beachwood OH 44122
ADDRESS

216-291-4744
PHONE NUMBER

0095530
ATTORNEY NUMBER

(rev. 02/01)

ENTERED BY 13

IN THE COURT OF COMMON PLEAS
STARK COUNTY, OHIO

2020CV01169

CASE NO. _____

STARK COUNTY OHIO
CLERK OF COURTS
2020 AUG 19 PM 1:33

_____
Aja Browder
**Plaintiff/Petitioner**

VS.

_____
Res-Care Ohio, Inc.

_____
**Defendant/Petitioner**

WRITTEN REQUEST FOR SERVICE
(TYPE OF PAPERS BEING SERVED)

For Services Complaint for Damages

☐ PLEASE CHECK IF THIS IS DOMESTIC CASE

TO THE CLERK:

PLAINTIFF/DEFENDANT REQUESTS:

CERTIFIED MAIL SERVICE ✓

PERSONAL SERVICE ☐

PROCESS SERVICE ☐

EXPRESS MAIL SERVICE ☐

REGULAR MAIL SERVICE ☐

RESIDENCE SERVICE ☐

FOREIGN SHERIFF ☐

**LIST NAME AND ADDRESS OF PERSON(S) TO BE SERVED**

ON

Res-Care Ohio, Inc.
2821 Whipple Ave NW
Canton, Ohio 44708

_____
Daniel Dubow
**ATTORNEY**

25200 Chagrin Blvd., Ste.200, Beachwood OH 44122
**ADDRESS**

216-291-4744
**PHONE NUMBER**

0095530
**ATTORNEY NUMBER**

(rev. 02/01)

ENTERED BY